# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

**DEBORAH GRAHAM,**
**PLAINTIFF**

VS.

**COMMISSIONER OF SOCIAL**
**SECURITY,**
**DEFENDANT**

CASE NO. 1:08CV000627
(DLOTT, J.)
(HOGAN, M.J.)

## REPORT AND RECOMMENDATION

Plaintiff, who is proceeding pro se, filed her application for disability insurance benefits and supplemental security income in July, 2005. Her application was denied, both initially and upon reconsideration. She then requested and obtained a hearing before an Administrative Law Judge (ALJ) in September, 2007 at Orlando, Florida. Plaintiff, who was represented by counsel at that time, testified as did Vocational Expert (VE), Jane Beougher. The ALJ reached an unfavorable decision also in September, 2007. Plaintiff then processed an appeal to the Appeals Council, which denied review in August, 2008. In September, 2008, Plaintiff filed her Complaint seeking judicial review,

## STATEMENTS OF ERROR

Plaintiff filed nothing resembling Statements of Error; however, since she is proceeding pro se, we will assume that she is challenging the decision of the ALJ as being based on something other than substantial evidence.

## PLAINTIFF'S TESTIMONY AT THE HEARING

Plaintiff testified that she is a high-school graduate and attended junior college for 1.5

years. She is 5'3" tall and weighs 168 lbs., is right-handed and a licensed driver. She worked as a nurse's assistant from 1974 to 2002. She also worked as a short-order cook at Applebee's and as a sales person at Bloomingdale's. Plaintiff testified that she was bi-polar. She also said that she is a diabetic, for which she takes insulin, and also suffers from hip pain, for which she takes Ibuprofen. Plaintiff testified that she was first diagnosed with Diabetes in January, 2006 and that she has obtained blood sugar medication ever since from the Orange County Clinic for the Homeless. She was married in April, 1996 and separated from her husband in June, 2005, at which time she moved to Ohio to live with her sister, Anna Shaw, in Middletown.

During her married years, she was a frequent resident of a shelter for victims of spouse abuse. She takes Norvasc for elevated blood pressure. She has had Hepatitis C for which she initially was on Interferon therapy, but stopped because of the side effects.

Plaintiff testified that she was diagnosed with Post-Traumatic Stress Disorder at the Homeless Shelter and that she takes medications for anxiety and depression. She admitted to Cocaine use for which she was hospitalized in June, 2007. She also spoke of being depressed, staying in her room and having attempted suicide.

She is able to do laundry, cook meals and shop for groceries, but suffers from auditory hallucinations. She testified that she could sit for 10 minutes, stand for 20 minutes, walk about 4 blocks and lift 50 lbs. She admitted to frequent alcohol and marijuana use.

## THE VOCATIONAL EXPERT AND THE HYPOTHETICAL QUESTION

The first hypothetical question to the VE asked her to assume that Plaintiff could handle the exertional demands of medium work, but that she was limited to simple instructions and routine tasks because of a limited ability to understand, remember and carry out instructions. The VE responded that Plaintiff would be unable to perform any of her past relevant work, but that she could perform a number of unskilled jobs, such as dishwasher, cook helper, sandwich maker, all of which existed in representative numbers in the national economy.

The VE also stated that if Plaintiff were to miss two days per week, she would be unable to work on a regular and continuing basis, but 2-3 days per month would probably be acceptable.

2

The ALJ's second hypothetical, and the one eventually accepted, asked the VE to assume all the limitations of the first and to add a restriction that would limit Plaintiff from anything but occasional interaction with the public, supervisors and coworkers. The VE responded that Plaintiff could not perform any of the previously mentioned jobs, but could perform the job of groundskeeper at the medium exertional level and maid at the light exertional level. Both jobs existed in representative numbers in the national economy.

## THE DECISION OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found that Plaintiff had Diabetes Mellitus, Affective Disorder and Anxiety Disorder and that each was a severe disorder. The ALJ found none to equal or exceed any Listing, either alone or in combination. The ALJ found that Plaintiff's residual functional capacity was as set forth in his second hypothetical question to the VE. Lastly, the ALJ found that Plaintiff had the ability to perform the jobs identified by the VE, groundskeeper and maid, and was therefore not disabled and was unable to share in the Social Security fund.

## THE MEDICAL RECORD

In April, 2008, Plaintiff was treated at Florida Hospital in Orlando for an overdose of sleeping pills. The differential diagnosis made there was "suicidal, depression, marijuana use and uncontrolled blood sugars." She was admitted and ultimately discharged with instructions to follow up with Lakeside Behavioral Healthcare.. Norvasc and Lisinopril were prescribed. (Tr. 7-27). She treated at Lakeside from October, 2007 to January, 2008. (Tr. 28-81).

Plaintiff was treated at Community Behavioral Health in Middletown in June, 2005. She had a history of spousal abuse for approximately 15 years when she presented at the facility. Her history indicated that she had a high school education, that her primary occupation was as a certified nursing assistant (CNA) and that she regularly abused alcohol, marijuana and cocaine. She reported two arrests for driving under the influence of alcohol. She reported being depressed and anxious and having trouble understanding, concentrating and remembering. She has

3

experienced thoughts of suicide. (Tr. 277-283).

Cheryl Johnson, a licensed social worker at the Middletown Counseling Center, said in July, 2005 that Plaintiff's diagnosis was mood and anxiety spectrum disorder and mixed personality disorder. Ms. Johnson reported that Plaintiff was involved in individual and group counseling and that she could not work until emotionally stable. (Tr.284).

Plaintiff had a total abdominal hysterectomy as a result of excessive bleeding and fibroid tumors in October, 2005. Kurt Froehlich, M.D., was the surgeon. (Tr. 286-287).

She was evaluated by Stephen Fritsch, Psy.D., a clinical psychologist, in September, 2005. Plaintiff told Dr. Fritsch that she fled to Ohio to live with her sister after a prolonged period of spousal abuse in Florida. After moving to Ohio, she has become increasingly isolated and withdrawn. Her first bout of depression occurred 12 years ago when she was hospitalized for several days, but failed to follow through with outpatient treatment. Three years ago, Plaintiff sought treatment at the Orange County Community Mental Health Center, where she participated in outpatient therapy and received prescriptions for Prozac. Upon arrival in Ohio, Plaintiff continued her treatment at Butler Behavioral Health Services and is currently taking Geodon and Paxil.

Dr. Fritsch said that Plaintiff had experienced suicidal ideation, but would unlikely act upon it. She experiences auditory hallucinations, feels hopeless and helpless, but her speech was articulate and her thoughts organized. She was alert and oriented. He estimated that she was of low-average intelligence. Dr. Fritsch's diagnosis was Major Depressive Disorder. He assigned a GAF of 42 and indicated that she has multiple stressors: flight from an abusive relationship, change of residence, loss of social support system, unemployment and poverty. She has the capacity to perform simple and moderately detailed tasks, but would have moderate to significant difficulty adapting to workplace stress. (Tr. 298-300).

A Mental Residual Functional Capacity Assessment was completed in November, 2005 by Bruce Goldsmith, who we assume has a Ph.D. in a clinical field. Dr. Goldsmith found no marked limitations, but did opine that Plaintiff had a moderate limitation of her ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workweek without interruptions from psychologically-

4

based symptoms, interact with the public and respond appropriately to changes in the work setting. Dr. Goldsmith's diagnosis was Major Depression and Post Traumatic Stress Disorder. He found that Plaintiff has a mild restriction of the activities of daily living and moderate difficulty maintaining social functioning and maintaining concentration, persistence or pace. His comment was: "She would do best in a slow-paced environment with little or no public interaction." (Tr. 303-320).

In February, 2006, Plaintiff sought voluntary admission to Lakeside Alternatives, Inc., a crisis stabilization facility. She reported a previous admission to Lakeside in 1995. Plaintiff said that she had been diagnosed with Major Depression and Post-Traumatic Stress Disorder, as well as high cholesterol, high blood pressure and Diabetes Mellitus. Her history showed polysubstance abuse and reports of generalized body pain. She was put on a suicide watch and her husband, who was the apparent source of her repeated abuse, was warned of her homicidal ideation regarding him. She was prescribed Naprosyn for physical pain and Paxil and Geodon for her emotional symptoms. (Tr. 357-361).

A second Mental Residual Functional Capacity Assessment was completed by Maryann Wharry, who we also assume to hold a Ph.D. in a clinical field, in April, 2006. Dr. Wharry found that Plaintiff had a moderate limitation of her ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workweek without interruptions from psychologically-based symptoms, relate to coworkers and respond appropriately to changes in the work setting. Dr. Wharry's opinion was that Plaintiff had a Bipolar Disorder as well as Post Traumatic Stress Disorder. Dr. Wharry rated Plaintiff's restriction regarding the ability to perform activities of daily living as "mild" and her difficulty maintaining social functioning and maintaining concentration, persistence or pace as "moderate." (Tr. 373-390).

A Physical Residual Functional Capacity Assessment was completed by Sunita Patel, who we assume is a medical doctor or osteopathic physician. Dr. Patel found that Plaintiff could lift 50 lbs. occasionally and 25 lbs. frequently, stand/walk for 6 hours in a workday and sit for 6 hours. (Tr. 391-398).

Records from Lakeside Behavioral Health Care from May, 2007 show that Plaintiff

presented with symptoms of depression, suicidal ideation, auditory hallucinations and substance abuse. She sought voluntary admission and was admitted. The history indicated that her first episode of mental illness occurred in 2004 and was a panic attack, for which she was hospitalized for 7 days. Since then, she has had several contacts with Lakeside, some of which were admissions. Prior to admission, Plaintiff was taking Geodon, Ativan, Cymbalta, Norvasc and insulin.

Plaintiff is a high school graduate and a licensed CNA and LPN. She has not worked since 2004. She reported having a husband and two daughters. She also reported having a criminal record for shoplifting and driving under a suspended license.

Her physical/neurological examination was unremarkable, although she was reported to be "significantly overweight." She reported four attempts at suicide during the 2006-2007 period two of which involved slitting her wrists. One was an overdose of medication and one involved jumping from a moving car. She was described as "verbal" and "displaying some social grace." She was diagnosed with Major Depressive Disorder with psychotic features, Cannabis dependence and alcohol abuse. On the physical axis, Plaintiff has high blood pressure and cholesterol as well as Diabetes Mellitus. A GAF of 38 was assigned. Plaintiff received treatment, which consisted of therapy sessions and various medications at Lakeside from May, 2007 to October, 2007. Her medications included: Seroquil, Paxil, Geodon, Insulin, Norvasc, Lipitor, Lisinopril, Cymbalta and Ambien. (Tr. 434-506).

## OPINION

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are

supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for disability insurance benefits, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(i), 423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R. § 416.905.

While the administrative hearing is not an adversarial procedure, the Administrative Law Judge (ALJ) occupies a delicate position when an individual is not represented by counsel at the hearing. The ALJ must elicit all relevant facts on both sides of the issue in order to fully develop the record; at the same time, he must not assume the role of counsel for the individual. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983). By itself, lack of representation by counsel at the hearing is not grounds for reversal. *Duncan v. Secretary of H.H.S.*, 801 F.2d 847, 856 (6th Cir. 1986); *Holden v. Califano*, 641 F.2d 405, 408 (6th Cir. 1981). On review, the Court must carefully examine the record and determine if the ALJ fulfilled his duty of developing a full and fair record. *Lashley*, 708 F.2d at 1051-52.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether

the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. §404.1520©. Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. §404.1521(b). Plaintiff is not required to establish total disability at this level of the evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Secretary of H.H.S.*, 736 F.2d 352, 357 (6th Cir.1984). The severity requirement may be employed as an administrative convenience to screen out claims that are totally groundless solely from a medical standpoint. *Higgs v. Bowen*, No. 87-6189, slip op. At 4 (6th Cir. Oct.28, 1988). An impairment will be considered nonsevere only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Secretary of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985)(citing

*Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). The Secretary's decision on this issue must be supported by substantial evidence. *Mowery v. Heckler*, 771 F.2d 966 (6th Cir. 1985).

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321 (6th Cir. 1978); *Phillips v. Harris*, 488 F. Supp. 1161 (W.D. Va. 1980). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *see Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

A mental impairment may constitute a disability within the meaning of the Act. *See* 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). However, the mere presence of a mental impairment does not establish entitlement to disability benefits. In order for a claimant to recover benefits, the alleged mental impairment must be established by medical evidence consisting of clinical signs, symptoms and/or laboratory findings or psychological test findings. 20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.00(B); *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

Alleged mental impairments are evaluated under the same sequential analysis as physical impairments. Once the Commissioner determines that a mental impairment exists, he/she must then evaluate the degree of functional loss it causes according to a special procedure. 20 C.F.R. §§ 404.1520a and 416.920a. A standard document, called the Psychiatric Review Technique Form, must be completed at each level of administrative review. This form, which corresponds to the Listing of Impairments for mental impairments, lists the signs, symptoms, and other medical findings which establishes the existence of a mental impairment.

The special procedure then requires a rating of the degree of functional loss resulting

from the impairment. 20 C.F.R §§ 404.1520a(b)(2) and 416.920a(b)(2). Plaintiff's level of functional limitation is rated in four areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, and pace; and 4) deterioration or decompensation in work or work-like settings. 20 C.F.R. §§ 404.1520a(c)(3)and 416.920a(c)(3); *see Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1993)(per curiam). The first three areas are rated on the following five-point scale: none, mild, moderate, marked, and extreme. The fourth is rated on the following four-point scale: none, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity. 20 C.F.R. §§ 404.1520a(c)(4)and 416.920a(c)(4).

Where the mental impairment is found to be severe, a determination must then be made as to whether it meets or equals a listed mental disorder. If it does not, the Commissioner must then complete a Mental Residual Functional Capacity Assessment form. This form also seeks to evaluate functional loss; however, it is intended to provide a more detailed analysis than that provided by the Psychiatric Review Technique form. The Commissioner must determine if this mental residual functional capacity is compatible with the performance of the individual's past relevant work, and if not, whether other jobs exist in significant numbers in the economy that are compatible with this assessment. *See* 20 C.F.R. §§ 404.1520(e)-(f), 404.1520a©.

The grid is designed for use when the alleged impairment manifests itself through limitations in meeting the strength requirements of jobs. 20 C.F.R. Subpart P, Appendix 2, § 200.00(e). If plaintiff suffers solely from nonexertional impairments, the grid is inapplicable and the Commissioner must rely on other evidence to rebut plaintiff's prima facie case of disability. *Id.*, § 200.00(e)(1). Nonexertional impairments include "certain mental, sensory, [and] skin impairments" as well as "postural and manipulative limitations [and] environmental restrictions." 20 C.F.R. Subpart P, Appendix 2, § 200.00(e). Where a plaintiff suffers from an impairment or a combination of impairments that results in both exertional and nonexertional limitations, the grid is consulted to see if a finding of disability is directed based upon the strength limitations alone. If not, the grid is then used as a framework and the Commissioner examines whether the nonexertional limitations further diminish plaintiff's work capability and preclude any types of jobs. *Id.*, § 200.00(e)(2). If an individual suffers from a nonexertional

impairment that restricts performance of a full range of work at the appropriate residual functional capacity level, the Commissioner may use the grid as a framework for a decision, but must rely on other evidence to carry his burden. *Abbott v. Sullivan*, 905 F.2d 918, 926-27 (6th Cir. 1990); *Damron v. Secretary of H.H.S.*, 778 F.2d 279, 282 (6th Cir. 1985); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 528-29 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). The existence of a minor nonexertional impairment is insufficient to preclude use of the grid for directing a decision. Rather, plaintiff must demonstrate that the nonexertional impairment "significantly limits" his ability to do a full range of work at the appropriate exertional level in order to preclude a grid based decision. *Atterberry v. Secretary of H.H.S.*, 871 F.2d 567, 572 (6th Cir. 1989); *Cole v. Secretary of H.H.S.*, 820 F.2d 768, 771-72 (6th Cir. 1987); *Kimbrough v. Secretary of H.H.S.*, 801 F.2d 794, 796 (6th Cir. 1986).

When the grid is not applicable, the Commissioner must make more than a generalized finding that work is available in the national economy; there must be "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform *specific* jobs." *Richardson v. Secretary of H.H.S.*, 735 F.2d 962, 964 (6th Cir. 1984) (per curiam) (emphasis in original); *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). Taking notice of job availability and requirements is disfavored. *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 536-37 n.7, 540 n.9 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). There must be more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *Richardson*, 735 F.2d at 964; *Kirk*, 667 F.2d at 536-37 n.7. The Commissioner is not permitted to equate the existence of certain work with plaintiff's capacity for such work on the basis of the Commissioner's own opinion. This crucial gap is bridged only through specific proof of plaintiff's individual capacity, as well as proof of the requirements of the relevant jobs. *Phillips v. Harris*, 488 F. Supp. 1161 (W.D. Va. 1980)(citing *Taylor v. Weinberger*, 512 F.2d 664 (4th Cir. 1975)). When the grid is inapplicable, the testimony of a vocational expert is required to show the availability of jobs that plaintiff can perform. *Born v. Secretary of H.H.S.*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Varley v. Secretary of H.H.S.*, 820 F.2d 777, 779 (6th Cir. 1987).

The assumptions contained in an ALJ's hypothetical question to a vocational expert must

be supported by some evidence in the record. *Hardaway v. Secretary of H.H.S.*, 823 F.2d 922, 927-28 (6th Cir. 1987). A proper hypothetical question should accurately describe plaintiff "in all significant, relevant respects; for a response to a hypothetical question to constitute substantial evidence, each element of the hypothetical must accurately describe the claimant." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). *See also Varley v. Secretary of H.H.S.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the evidence supports plaintiff's allegations of pain, a response to a hypothetical question that omits any consideration of plaintiff's pain and its effects is of "little if any evidentiary value." *Noe v. Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975). However, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of H.H.S.*, 39 F.3d 115, 118 (6th Cir. 1994).

A treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048, 1054 (6th Cir. 1983). A summary by an attending physician made over a period of time need not be accompanied by a description of the specific tests in order to be regarded as credible and substantial. *Cornett v. Califano*, No. C-1-78-433 (S.D. Ohio Feb. 7, 1979) (LEXIS, Genfed library, Dist. file). A physician's statement that plaintiff is disabled is not determinative of the ultimate issue. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984). The weight given a treating physician's opinion on the nature and severity of impairments depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d); *Harris v. Heckler*, 756 F.2d 431 (6th Cir. 1985). If not contradicted by any substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference. *Harris*, 756 F.2d at 435. *See also Cohen v. Secretary of H.H.S.*, 964 F.2d 524, 528 (6th Cir. 1992). While the Commissioner may have expertise in some matters, this expertise cannot supplant the medical expert. *Hall v. Celebrezze*, 314 F.2d 686, 690 (6th Cir. 1963); *Lachey v. Secretary of H.H.S.*, 508 F. Supp. 726, 730 (S.D. Ohio 1981).

When a plaintiff presents evidence to the Appeals Council but not to the ALJ, ("additional evidence") and the Appeals Council considers the additional evidence but declines to review the plaintiff's claim, the District Court may not consider that additional evidence,

unless all the requirements of a remand under sentence six of 42 U.S.C. § 405(g) have been met. *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). In *Cotton*, the Sixth Circuit adopted the Seventh Circuit's rationale in *Eads v. Secretary of H.H.S.*, 983 F.2d 815 (7th Cir. 1993) that when the Appeals Council declines review, it is the decision of the ALJ and therefore the facts which were before the ALJ that are subject to appellate review. *Cotton*, 2 F.3d at 695-96. In a sentence six remand, the Court does not rule on the correctness of the administrative decision. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 174 (6th Cir. 1994), *citing Melkonyan*, 501 U.S. 89.

The Court may remand a case to the Commissioner for consideration of additional evidence only if the party seeking remand demonstrates that 1) there is good cause for the failure to incorporate this evidence into the record at the prior hearing and 2) this evidence is new and material. 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 111 S. Ct. 2157, 2163, 2165 (1991); *Willis v. Secretary of H.H.S.*, 727 F.2d 551, 553-54 (6th Cir. 1984).

To show good cause, the moving party must present a valid justification for the failure to have acquired and presented the evidence in the prior administrative proceeding. *Oliver v. Secretary of H.H.S.*, 804 F.2d 964, 966 (6th Cir. 1986); *Willis*, 727 F.2d at 554.

To be "material" within the meaning of § 405(g), the new evidence 1) must be relevant and probative to plaintiff's condition prior to the Commissioner's decision and 2) must establish a reasonable probability that the Commissioner would have reached a different decision if the evidence had been considered. *Sizemore v. Secretary of H.H.S.*, 865 F.2d 709, 711 (6th Cir. 1988); *Oliver*, 804 F.2d at 966. New evidence on an issue already fully considered by the Commissioner is cumulative, and is not sufficient to warrant remand. *Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980); *Thomas v. Schweiker*, 557 F. Supp. 580, 582 (S.D. Ohio 1983) (Spiegel, J.). Evidence that plaintiff's condition has deteriorated since the Commissioner's decision is not material. *Sizemore*, 865 F.2d at 712; *Oliver*, 804 F.2d at 966. If plaintiff has experienced serious deterioration since the Commissioner's decision, the appropriate remedy is to file a new application. *Sizemore*, 865 F.2d at 712.

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with

or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 111 S. Ct. 2157, 2163 (1991).

Where the Commissioner has erroneously determined that an individual is not disabled at steps one through four of the sequential evaluation, remand is often appropriate so that the sequential evaluation may be continued. *DeGrande v. Secretary of H.H.S.*, 892 F.2d 1043 (6th Cir. Jan. 2, 1990) (unpublished, available on Westlaw). Remand is also appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Remand ordered after a hearing on the merits and in connection with an entry of judgment does not require a finding that the Commissioner had good cause for failure to present evidence at the prior administrative hearing. *Faucher*, 17 F.3d at 173.

Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher*, 17 F.3d at 176. *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176. *See also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

The ALJ's decision was made on September 14, 2007. Plaintiff submitted records from Lakeside Behavioral Healthcare after the ALJ's decision, but before the Appeals Council denied review. These records relate to the time period from September 24, 2007 to October 1, 2007. Defendant argues that these records can't form the basis for disagreement with the ALJ's decision since he did not have them and couldn't consider them in making his decision. We agree that this evidence can only be considered in the context of a remand under Sentence Six of 42 U.S.C., Section 405(g) if such evidence is new and material, there is good cause for Plaintiff's failure to include such evidence in the record before the ALJ's decision, and there is a reasonable probability that had the new evidence been considered, the ALJ would have reached a different

14

conclusion. The evidence is clearly new and material and there is good cause for Plaintiff's failure to include it in the record, since it was generated after the ALJ's decision. Whether or not the new evidence would have triggered a different result can be determined by including it, for purposes of evaluating the "substantial evidence" test, in the evidence base and after doing so, determining whether the total evidence presented constitutes a reasonable basis for a different conclusion by the ALJ.

The ALJ determined that Plaintiff had three impairments he considered to be severe, Diabetes Mellitus, an Affective Disorder and an Anxiety Disorder. There is a smattering of proof that Plaintiff may have a problem with substance abuse and certainly has elevated blood pressure and cholesterol. The evidence that Plaintiff has a problem with addicting substances comes from her own admissions that she had a history of substance abuse regarding alcohol, marijuana and Cocaine, but had never sought or received any treatment. There is a history of two DUI arrests and possibly one conviction. The evidence is that her alcohol and Cocaine usage ceased, but Lakeside Behavioral Health reports indicate a current usage of marijuana. There is no opinion evidence in the record of any functional limitations regarding Plaintiff's substance abuse, even if it is continuing, so the ALJ's refusal to list this impairment as severe is certainly appropriate.

Although there is evidence that Plaintiff has both elevated blood pressure and cholesterol, both of these impairments were recognized and are being treated with Norvasc and Lipitor respectively. There is no evidence of any functional deficits due to either high blood pressure or elevated cholesterol, so the ALJ's omission of these two impairments from the severe category is also appropriate.

Plaintiff has Diabetes Mellitus, a condition which was first diagnosed in January, 2006 when Plaintiff was seen in the Emergency Room of Florida Hospital for an abscess near her right armpit. The cyst was drained and insulin was prescribed. Education was provided regarding diabetic care. Plaintiff's "sugars were well-controlled" upon discharge. Subsequent admissions to Lakeside Behavioral Health listed Diabetes Mellitus as a condition which required monitoring and insulin treatment, but the record contains no indication of any functional limitations caused by Plaintiff's diabetes. The ALJ's conclusion that this impairment, although severe, but not disabling, was also proper.

The last impairment worth considering is what the ALJ referred to as an "Affective Disorder" and an "Anxiety Disorder." There is an opinion by Dr. Fritsch, an examining but non-treating clinical psychologist, that Plaintiff suffers from Major Depression. Dr. Goldsmith, also a clinical psychologist, but a paper reviewer, agreed that the proper diagnosis was Major Depression, but he also felt that Plaintiff suffered from Post-Traumatic Stress Disorder as a result of her history of spousal abuse. Both Dr. Goldsmith and the professionals at Lakeside Behavioral Health agreed on the dual diagnosis of Major Depression and Post-Traumatic Stress Disorder, but added Cannabis and alcohol abuse to the diagnostic package. Dr. Wharry, a paper reviewer, agreed with the diagnosis of Post-Traumatic Stress Disorder, but opined that Plaintiff had a Bipolar Disorder, rather than Major Depression.

From the above, one can readily see that the bulk of the psychological opinion supports a dual diagnosis of Major Depression and Post-Traumatic Stress Disorder. There is generally support for a diagnosis of Affective Disorder, because depression is a general component of Affective Disorders and also support for a diagnosis of Anxiety Disorder, the major component of which is anxiety generally. Plaintiff complained of anxiety to Greg Corban and Cheryl Johnson, therapists at Community Behavioral Health in Middletown, Ohio, to Dr. Fritsch and to therapists at Lakeside Behavioral Health. Post-Traumatic Stress Disorder is recognized as an Anxiety Disorder. Although the ALJ's classification of Plaintiff's mental impairments as an "Affective Disorder" and an "Anxiety Disorder " seems too broad-based in light of the rather specific diagnoses provided by the mental health experts, the source of error, if any, must relate to functional limitations, whatever the correct diagnosis might be.

It is in the area of functional limitations resulting from her mental health impairments that Plaintiff's case either takes shape or begins to degenerate. Dr. Fritsch, the only clinical psychologist who examined Plaintiff and gave an opinion, said that Plaintiff's cognitive ability was in the low-average range, but that she had the capacity to perform "simple and moderately detailed tasks" and that she "has the emotional stability and social skills to maintain appropriate work-related relationships." Dr. Fritsch described Plaintiff's depression as "chronic, pervasive and sometimes quite severe." He said that her symptoms have escalated in recent months corresponding to life changes. His opinion was that Plaintiff would have "moderate to

16

significant difficulty adaptively responding to typical demands and stresses of the workplace."

Dr. Goldsmith, like Dr. Fritsch, found no marked limitations, but found moderate limitations in all areas. Dr. Wharry expressed a similar opinion, although she felt that the restriction in the category evaluating a person's ability to perform the activities of daily living is "mild." The Lakeside Behavioral Health records mention four attempts at suicide in the 2006-2007 period as well as auditory hallucinations, which were also mentioned in the Florida Hospital records from October, 2007. Plaintiff has been hospitalized several times for mental health problems and the last admission was on a voluntary basis.

Plaintiff has no significant physical problems, except for her diabetes, which is generally under control, despite periodic episodes to the contrary. She has a persistent and chronic problem with depression that has lasted for years despite the fact that she has sought and obtained treatment at various clinics and mental health providers. As Dr. Fritsch observed, her depression seems to be situational and escalates with life problems. She has a number of stressors, such as addiction to substance abuse, poverty, unemployment, and being the victim of an abusive relationship. For some unexplained reason, she decided to forego legal expenses and proceed unrepresented by counsel, a decision we regard as unfortunate because the record requires supplementation for one to conclude that justice was done. Plaintiff has demonstrated that she lacks the capacity to handle her case on a *pro se* basis.

## CONCLUSION

One cannot fault the ALJ for failing to consider after-acquired information, but this Court believes that had the record included the materials from Lakeside Behavioral Health which Plaintiff filed subsequently, there is a reasonable probability that the result may have been different, especially had a medical expert been called to review all the records, including the most recent ones and give an independent opinion on whether or not Plaintiff's Major Depression and Post-Traumatic Stress Disorder render her presently disabled.

17

In a Sentence Six remand,[1] the Court does not rule on the correctness of the administrative decision as in a Sentence Four determination. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing *Melkonyan v. Sullivan*), 501 U.S. 89 (1991)). Instead:

> [T]he court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding. The statute provides that following a sentence six remand, the Secretary must return to the district court to "file with the court any such additional or modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based."

*Melkonyan*, 501 U.S. at 97-98 (citations omitted). As discussed above, a Sixth Sentence remand is warranted to allow for consideration of the materials from Lakeside Behavioral Health and the impact thereon on Plaintiff's mental functioning.

### IT IS THEREFORE RECOMMENDED THAT:

1. This matter be **REMANDED** pursuant to Sentence Six of 42 U.S.C. § 405(g) for consideration of the materials from Lakeside Behavioral Health.

August 27, 2009

Timothy S. Hogan,
United States Magistrate Judge

---

[1] Sentence Six of § 405(g) provides in full:

The court may, on motion of the Secretary made for good cause shown before he files his answer, remand the case to the Secretary for further action by the Secretary, and it may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact or his decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based.

## NOTICE TO PARTIES REGARDING FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to these proposed findings and recommendations within **TEN DAYS** after being served with this Report and Recommendation ("R&R"). Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this R&R is being served by mail. That period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. If the R&R is based, in whole or in part, upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **TEN DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

J:\HOGANTS\DGraham.wpd

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☑ Agent ☐ Addressee<br>B. Received by (Printed Name) — C. Date of Delivery |
| 1. Article Addressed to:<br><br>Deborah Graham<br>2713 Bradford Dr.<br>Middletown, OH 45044 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No<br><br>3. Service Type<br>☑ Certified Mail ☐ Express Mail<br>☐ Registered ☐ Return Receipt for Merchandise<br>☐ Insured Mail ☐ C.O.D.<br>4. Restricted Delivery? (Extra Fee) ☐ Yes |
| 2. Article Number<br>(Transfer from service label) | 7002 3150 0000 8388 4179 |
| PS Form 3811, August 2001 | Domestic Return Receipt — 102595-02-M-1540 |

1:08cv622 (Doc. 16)